# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JULVIO JULCE, | |
| Petitioner, | Civil Action No. |
| | 18-10163-FDS |
| v. | |
| YOLANDA SMITH, | |
| Respondent. | |

## MEMORANDUM AND ORDER

**SAYLOR, J.**

This is an immigration case. Petitioner Julvio Julce is a Haitian citizen who is subject to a final order of removal from the United States. He seeks an injunction from this Court preventing his transfer out of Massachusetts until his case is resolved; a stay of removal; and a writ of habeas corpus ordering his immediate release.

Julce became a lawful permanent resident of the United States in 1993. In 2004, he was convicted of two drug offenses under Massachusetts law. On the basis of those convictions, the government initiated removal proceedings against him. The Board of Immigration of Appeals affirmed the removal order in 2007, and his petition for review was denied by the First Circuit in 2008. Except for a three-week period in late 2007, he has resided in the United States continuously since 1993.

In October 2017, Julce was informed that he would be removed from the United States. He then filed this habeas petition pursuant to 28 U.S.C. § 2241. The petition raises claims under the Due Process Clause of the Fifth Amendment and United Nations Convention Against

Torture, and counsel has also invoked the Suspension Clause of the Constitution. In substance, Julce contends that he suffers from Crohn's disease, and that the Haitian government "routinely incarcerates" deportees with criminal records and subjects them to "abhorrent, unsanitary conditions." He seeks to block his removal pending a further opportunity to litigate his claims.

Julce is a sympathetic figure in several respects. He suffers from a debilitating disease; he has resided in the United States for nearly 25 years; and he is about to be removed to the poorest country in the hemisphere. But virtually all illegal immigrants are sympathetic figures, at least to some degree. Virtually all came here to escape poverty, crime, and injustice. Most have family members here; some have children who are citizens. And virtually all will be worse off after removal, some dramatically so.

The question presented is not whether Julce will suffer a grave hardship if he is removed, but who gets to decide whether his removal is appropriate. By law, the power to establish immigration controls, and to establish a process for resolving immigration disputes, rests with Congress, subject only to the restraints of the Constitution. Congress has created a statutory procedure that does not include a role for the district courts; indeed, Congress has expressly stripped district courts of jurisdiction to hear such disputes. The only power that this Court has is to ascertain whether any aspect of the process to which petitioner has been subjected violates the Constitution. For the reasons set forth below, it plainly does not. Accordingly, the petition will be dismissed.

## I. **Background**

### A. **Factual Background**

Julvio Julce is a citizen of Haiti. (Pet. ¶ 1). He is currently 38 years old and suffers from Crohn's disease. (Pet. ¶¶ 1, 8). He entered the United States as a lawful permanent resident on

August 23, 1993. *Julce v. Mukasey*, 530 F.3d 30, 32 (1st Cir. 2008) (summarizing Julce's immigration history). On May 14, 2003, he pleaded guilty in Massachusetts state court to one count of possession with intent to distribute a Class D substance (marijuana) and one count of possession of marijuana in a school zone, and received a two-year sentence. *Id.*

Because of those convictions, U.S. Immigrations and Customs Enforcement initiated removal proceedings against Julce on May 25, 2004. *Id.* ICE stated that he was removable because he had been convicted of an aggravated felony and because he violated a law relating to a controlled substance. *Id.* (citations omitted). He contested his removability, arguing that he was eligible for discretionary cancellation of removal because his conviction for possession with intent to distribute did not qualify as an "aggravated felony." *Id.* The Immigration Judge rejected his application for cancellation of removal on January 30, 2007. *Id.* The Board of Immigration Appeals ("BIA") affirmed the IJ's decision on August 2, 2007. *Id.*

Julce then petitioned the First Circuit for review of the BIA's decision. *Id.* at 33. The First Circuit initially denied the petition without prejudice on September 5, 2007, for failure to provide an argument showing any likelihood of success. (Resp. Ex. A at 4). The following month, on October 12, 2007, the government filed a notice of intent to remove Julce on or after October 24, 2007. (*Id.*). Within a week, an attorney entered an appearance on behalf of Julce, and on October 22, 2007, he filed a renewed application for stay of removal. (*Id.*). The First Circuit granted a stay, but stated that the grant was "without prejudice to the [government] filing a response to the renewed motion and moving to lift the stay." (*Id.*).

Despite the stay, ICE's Enforcement and Removal Operations ("ERO") improperly removed Julce from the United States to Haiti in late November 2007. (Pet. ¶ 7). Upon arriving in Port-au-Prince, he fell ill and was hospitalized due to complications from Crohn's disease.

3

(Pet. ¶ 9).

On December 11, 2007, ICE granted Julce a 90-day parole back into the United States on humanitarian grounds. (Pet. ¶ 10; Docket No. 15). He appears to have reentered the United States on December 18, 2007. (Docket No. 15). After the 90-day period expired, he remained in the United States on an order of supervision. (Pet. ¶¶ 11-12). ICE has not authorized additional parole after the initial 90-day period expired in March 2008. (Greenbaum Decl. ¶ 5). On June 20, 2008, the First Circuit ruled on the merits of his petition, and denied his request for review of the BIA's denial of his application for cancellation of removal. *Julce*, 530 F.3d at 36.[1]

Over the past decade, Julce's medical situation has worsened and he has developed a chronic rheumatoid condition along with gastrointestinal issues associated with Crohn's disease. (Pet. ¶ 13). On October 19, 2017, an ERO officer informed him that he would have to obtain an airline ticket to depart the United States by December 21, 2017. (Pet. ¶ 15). In addition, he would have to provide proof of the airline ticket by November 21, 2017. (*Id.*). On November 21, 2017, he reported to the ERO officer with a plane ticket to Haiti scheduled for December 21, 2017. (Pet. ¶ 16). However, he also requested an administrative stay of removal because of his illness and asked to speak with an asylum officer to give a "reasonable fear" statement. (Pet. ¶¶ 17, 20). ERO denied the request for a stay because he had not yet obtained a passport. (Pet. ¶ 18).

On December 19, 2017, Julce surrendered himself to ERO. He has since been detained at the Plymouth County Correctional Facility. (Pet. ¶¶ 22-23). On January 22, 2018, ERO determined that Julce could not be seen by an asylum officer because he was being removed

---

[1] The First Circuit held that Julce's conviction of possession with intent to distribute marijuana qualified as an "aggravated felony." *Julce*, 530 F.3d at 35. The Supreme Court has subsequently abrogated that holding in *Moncrieffe v. Holder*, 569 U.S. 184 (2013).

4

pursuant to his original 2007 order of removal. (Pet. ¶ 26). Had ERO sought to reinstate an order of removal, a referral to an asylum officer would have been appropriate. (Pet. ¶ 27).

On January 26, 2018, ERO indicated to Julce that he would be transferred to the Suffolk County House of Correction. (Pet. ¶ 32). The petition alleges that ERO anticipates transferring him to the Oakdale Detention Center in Louisiana, which is an ICE deportation staging facility. (Pet. ¶ 33). On February 26, 2018, the government gave notice that it intends to transfer Julce to a detention center in New Hampshire for purposes of arranging his removal to Haiti within 72 hours. (Docket No. 20).

### B. Procedural Background

Julce filed the present petition on January 26, 2018. The petition alleges due-process violations arising out of the failure to reinstate his order of removal and denial of an asylum officer referral. (Pet. ¶¶ 51-53). The petition seeks three forms of relief. First, it asks that the Court "enjoin Respondents from transferring Petitioner outside the jurisdiction of this Court pending resolution of the case." (Pet. at 11). Second, it requests a "Stay of Removal to prevent ICE from deporting [Petitioner] while the instant matter is pending [] to prevent irreparable harm." (*Id.*). Third, it requests a "Writ of Habeas Corpus ordering Respondents to release Petitioner immediately." (*Id.*).

On January 27, 2018, the Court dismissed all named respondents except for Yolanda Smith, the Superintendent of the Suffolk County House of Correction. (Docket No. 6). A status conference was held on January 30, 2018, where the Court directed the parties to submit briefs concerning the existence of subject-matter jurisdiction to consider the petition. (Docket No. 10). A hearing on this matter was held on February 22, 2018.

## II. Analysis

### A. The REAL ID Act Bars this Court from Exercising Jurisdiction

In 2005, Congress passed the REAL ID Act, which stripped federal district courts of jurisdiction to review aliens' challenges to their final orders of removal. *See Ishak v. Gonzales*, 422 F.3d 22, 27-28 (1st Cir. 2005) ("[T]he REAL ID Act [ ], in the plainest of language, deprives the district courts of jurisdiction in removal cases."); 8 U.S.C. § 1252(a)(5). The statute provides:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

*Id.* § 1252(g).[2]

Congress has provided a statutory process to handle immigration disputes that takes place entirely in immigration courts and the BIA, subject to judicial review by courts of appeals. Petitioners must first exhaust "all administrative remedies available to the alien as of right" through the immigration courts and BIA. *Id.* § 1252(d)(1). The immigration courts and BIA can reopen removal proceedings on the basis of "new facts," 8 C.F.R. §§ 1003.2(c), 1003.23(b)(3), and grant stays of removal, *id.* §§ 1003.2(f), 1003.23(b)(1)(v). Judicial review comes in the form of a "petition for review" filed with the circuit courts of appeal. *See* 8 U.S.C. § 1252(a)(5) ("[A] petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal . . . except as provided in subsection (e).").

Petitioner contends that he has a right to plead a case for relief under the Convention

---

[2] The statute refers to the Attorney General, but immigration enforcement is done largely through the Department of Homeland Security.

6

Against Torture. (Pet'r Brief at 7). However, section 1252 also provides that "a petition for review with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of any . . . claim under the United Nations Convention Against Torture." 8 U.S.C. § 1252(a)(4). And, even then, a petitioner must have first exhausted all administrative remedies pursuant to section 1252(d)(1). Accordingly, it is clear that this Court does not have jurisdiction to stay petitioner's final removal order.

### B. The Suspension Clause Is Not Violated

Petitioner's principal argument appears to be that the jurisdictional bar set forth in section 1252 cannot apply to his case because he is without an "adequate and effective alternative[ ] to habeas corpus relief" in violation of the Suspension Clause. (Pet'r Brief at 6).[3] He contends that he cannot file a motion to reopen his removal proceedings because he was removed in 2007 and two regulations bar him from filing such a motion. (*Id.* at 5) (citing 8 C.F.R. §§ 1003.2(d), 1003.23(b)).

That argument is without merit. Notwithstanding the fact that petitioner's 2007 removal was improper (and quickly remedied), the First Circuit invalidated the two regulations in question in *Santana v. Holder*, 731 F.3d 50 (1st Cir. 2013). Therefore, since 2013, no statute or regulation prevented petitioner from filing a motion to reopen. He has had approximately four-and-a-half years to file a motion raising the claims he has raised here.[4] Therefore, there are "adequate and effective alternatives to habeas corpus" such that the Suspension Clause is not offended. *Devitri v. Cronen*, 2017 WL 5707528, at *5 (D. Mass. Nov. 27, 2017).

---

[3] The Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I, § 9, cl. 2.

[4] This includes any claim for ineffective assistance of counsel, which petitioner raised for the first time at the February 22, 2018 hearing.

7

Moreover, *Devitri*, on which petitioner heavily relies, is readily distinguishable. In that case, 51 Indonesian Christians sought stays of their removal through habeas petitions. *Id.* at *1. Judge Saris found that subject-matter jurisdiction existed for the limited purpose of ensuring that there were "adequate and effective alternatives to habeas corpus relief." *Id.* at *5. However, Judge Saris's opinion was premised on two facts: (1) that there were changed country conditions to warrant the filing of a new claim for fear of persecution, and (2) that an administrative stay pending a motion to reopen was unavailable to the petitioners because they had not yet been detained by ICE. *Id.* at *5-7.

By contrast, petitioner here appears to fail to raise "new facts" that would justify a motion to reopen as required in 8 C.F.R. §§ 1003.2(c), 1003.23(b)(3). His brief contends that he would be subject to torture in Haiti because the government "routinely incarcerates criminal deportees and subjects these deportees to abhorrent, unsanitary conditions." (Pet'r Brief at 2). But that claim is not new; similar arguments have been raised (and rejected) for at least a decade. *See Bernadin v. Ashcroft*, 105 Fed. Appx. 281, 283 (1st Cir. 2004) ("The possibility that the respondent may suffer under [] poor prison conditions is not sufficient to substantiate a finding that the Haitian government acquiesces in the 'torture' of criminal deportees who are detained.").

Furthermore, and in any event, petitioner is currently in ICE custody. As noted above, he is free to file a motion to reopen and request an administrative stay from the BIA pending the adjudication of such a motion. Therefore, *Devitri* is inapposite, and the Court lacks subject-matter jurisdiction to interfere in petitioner's removal.

## C. Other Forms of Relief Sought Are Inappropriate

In his brief, petitioner states that the Department of Homeland Security "unlawfully and arbitrarily revoked" his parole. (Pet'r Brief at 3). While respondent concedes that this Court

"may have jurisdiction to review the basis for [petitioner's] detention," (Resp. Brief at 11), it is clear that petitioner's argument is without merit. When he re-entered the United States on December 18, 2007, petitioner was granted parole for 90 days. (Pet. ¶ 10; Docket No. 15). Contrary to petitioner's suggestion, the government never extended his parole. (Greenbaum Decl. ¶ 5). To the contrary, it "automatically terminated without written notice," 8 C.F.R. § 212.5(e)(1)(ii).[5] Because petitioner's parole was never renewed, he was not entitled to the written notice of revocation of parole provided for in 8 C.F.R. § 212.5(e)(2).[6] Once parole expired, his legal status reverted to an alien subject to a final order of removal with a pending petition for review before the First Circuit. *See id.* ICE could then detain him or release him on an order of supervision, subject to future execution of the final order of removal. *See* 8 U.S.C. § 1231(a)(3) (providing for supervision after expiration of 90-day period); *id.* § 1231(a)(6) (granting ICE discretion to provide for release and supervision). ICE elected to release him on an order of supervision, and its conduct was fully compliant with applicable statutes and regulations.

To the extent that petitioner challenges the length of his detention, that claim must also fail. The Supreme Court has stated that when an alien has been detained for more than six

---

[5] The relevant regulation, 8 C.F.R. § 212.5(e)(1), states as follows:

Parole shall be automatically terminated without written notice (i) upon the departure from the United States of the alien, or, (ii) if not departed, at the expiration of the time for which parole was authorized, and in the latter case the alien shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required.

[6] The same regulation goes on to state:

In cases not covered by paragraph (e)(1) of this section, upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole.

8 C.F.R. § 212.5(e)(2)(i).

months pursuant to 8 U.S.C. § 1213(a)(6), and the alien has shown that "there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001). However, it is undisputed that petitioner has been detained only since December 19, 2017, when he was taken into ICE custody. (Pet. ¶ 22). Because only three months have elapsed, a claim under *Zadvydas* is premature at best.

## III. Conclusion

For the foregoing reasons, this Court finds that it does not have subject-matter jurisdiction over the petition, and the action will be dismissed.

**So Ordered.**

Dated: February 27, 2018

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge